NOT FOR PUBLICATION (Doc. No. 6)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

TERESA M. STALLONE, ED. D.

Plaintiff,

v.

CAMDEN COUNTY TECHNICAL SCHOOLS BOARD OF EDUCATION, et al.

Defendants.

Civil No. 12-7356 (RBK/JS)

**OPINION**

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of the Camden County Technical Schools Board of Education ("Board") and Dr. Albert Monillas (collectively "Defendants")[1] to dismiss the Complaint of Teresa M. Stallone ("Plaintiff"). The Board and Monillas move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

Plaintiff, a School Principal employed by the Board, alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the New Jersey Law against Discrimination

[1] A third defendant, Kathryn Hartford, has not joined the Motion to Dismiss filed by the Board and Monillas. Ms. Hartford is the former Assistant Superintendent and the Affirmative Action Officer of the Board.

("NJLAD"), and also claims damages under New Jersey common law for intentional infliction of emotional distress against Defendants.

For the reasons stated herein, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff began working for the Board in 1982. (Compl. ¶ 26.) Over the years, she worked in various positions, including positions as a teacher, a department chairperson, and a supervisor. (Compl. ¶ 27-29.) In May 2008, Plaintiff became the Principal of the District's Technical Institute (Compl. ¶ 30), and in May 2009, her responsibilities were modified to include the position of Principal of the Gloucester Township Campus in addition to serving as Principal of the Technical Institute. (Compl. ¶ 31.) Dr. Monillas had become the Superintendent of the School Board in January 2008, and was Plaintiff's immediate supervisor. (Compl. ¶ 8-9, 34.)

Plaintiff alleges that Dr. Monillas made a number of sexually offensive oral and written statements during the course of her employment. (Compl. ¶ 35.) On February 3, 2011, Dr. Monillas forwarded an e-mail to Plaintiff and another female principal regarding attendance at the New Jersey Council of County Vocational Technical Schools' Winter Meeting. In the e-mail he asked the two female principals: "Do the three of us want to share a room?" (Compl. ¶ 49.) After both recipients responded in a manner indicating that Monillas' suggestion was not one that either would consider, Monillas sent another e-mail suggesting that he sleep in one bed in the hotel room and that Plaintiff and the other female principal share another. (Compl. ¶ 52.) The complaint alleges that Plaintiff was told by the other principal that Monillas also informed her in connection with the hotel proposition that he sleeps in the nude. (Compl. ¶ 53.)

Plaintiff's complaint also alleges other acts that she found to be "unwelcome, pervasive, inappropriate, and offensive" on the part of Dr. Monillas. (Compl. ¶ 35.) In 2010, she alleges that she went to Monillas' office and found him inside with his wife trying on a pair of pants. When Plaintiff entered his office, he partially pulled up his shirt, evidently in an attempt to tuck it in, exposing his stomach and the top band of his underwear to Plaintiff. (Compl. ¶ 46-47.)

In December 2010, in the presence of Plaintiff, Monillas allegedly asked a female employee who had undergone chemotherapy whether her pubic hair was going to fall out. (Compl. ¶ 116.) Monillas also allegedly discussed the topic of swimming nude with staff members and informed them that in the past the students swam nude in the pool during gym class. (Compl. ¶ 111.)

Following the foregoing incidents, Plaintiff reported Dr. Monillas' conduct to Kathryn Hartford, the Board's Assistant Superintendent and Affirmative Action Officer. (Compl. ¶ 55.) On February 28, 2011, shortly after reporting the sexual harassment complaint to Hartford, Monillas informed Plaintiff that her salary would be reduced by $10,000.00 per year when the Technical Institute closed in five months' time, and that the reason for the reduction was the closure of the Technical Institute. (Compl. ¶ 62.) She alleges that no other Board employees had their compensation reduced, although other employees were transferred due to the closure of the Technical Institute and received a reduction in job duties. (Compl. ¶ 100.) On March 16, 2011, the Board eliminated various staff positions, including that of Hartford. (Compl. ¶ 78.) Plaintiff alleges that Hartford stated at the March 16, 2011 board meeting that she felt her position was eliminated because she reported a sexual discrimination complaint made by "the principals" to the Board. (Compl. ¶ 79-80.) The same day, Monillas sent an e-mail to all staff in the district indicating that Patricia Fitzgerald, the other district principal (and the other recipient of the offensive e-mail) made no such sexual harassment complaint, in effect—because there are only two principals employed by

the Board—disclosing to all staff the fact that Plaintiff had made a sexual harassment complaint. (Compl. ¶ 83-84.)

After Plaintiff filed a formal complaint of sexual harassment with the Hartford, she contends that the Board violated her right to confidentiality and its own policies when her complaint was discussed in open session at a board meeting. (Compl. ¶ 82.) She also alleges that the Board violated its grievance procedures by failing to provide Plaintiff with a copy of the Board's investigation, including the result. (Compl. ¶ 121.) Plaintiff further alleges the Board's failure to comply with its internal procedures by not completing the harassment investigation within ten days. (Compl. ¶ 125.)

On February 13, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 21.) On October 19, 2012, the EEOC issued Plaintiff a Notice of Right to Sue. (Compl. ¶ 22.) Plaintiff timely filed her Complaint herein on November 30, 2012.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

## III. DISCUSSION OF MOTION TO DISMISS

### A. Plaintiff’s Title VII and NJLAD Claims Against the Board

Defendants argue that Plaintiff’s allegations do not constitute a sufficient factual predicate for a claim under Title VII or the NJLAD. Title VII of the Civil Rights Act of 1964 makes it unlawful for employers to “discriminate against any individual with respect to compensation, terms, conditions or privileges of employment, because of . . . sex.” 42 U.S.C §2000e-2(a)(1). Because New Jersey courts “have frequently looked to case law under Title VII . . . for guidance in developing standards to govern the resolution of LAD claims,” the Court will analyze the NJLAD claims together with the Title VII claims. Carmona v. Resorts Int’l Hotel, Inc., 189 N.J. 354 (N.J. 2007). Sexual harassment that is actionable under Title VII can take two forms—quid pro quo or a hostile work environment. “Quid pro quo” harassment involves express or implied demands for sexual favors by a superior directed at a subordinate in exchange

for a benefit or the avoidance of a negative consequence. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986). Plaintiff's complaint does not allege quid pro quo, but rather a hostile work environment form of sexual harassment.

A plaintiff bringing a hostile work environment claim under Title VII must allege harassment that is severe or pervasive. Burlington Indus. v. Ellerth, 524 U.S. 742, 752 (1998). Specifically, there must exist in the workplace "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" that permeates the workplace. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor, 477 U.S. at 65, 67). The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Services, 523 U.S. 75, 81 (1998) (quoting Harris, 510 U.S. at 23) (internal quotations omitted).

In this Circuit, in order to show a hostile work environment, a plaintiff must show that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in her position; and (5) the existence of respondeat superior liability. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990). In applying the NJLAD, the New Jersey Supreme Court uses a similar test, requiring that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (N.J. 1993).

It appears that in arguing that "[t]he non-conclusory factual allegations in this case" consist of a limited number of inappropriate actions on the part of Monillas, Defendants contend that Plaintiff has not pled a prima facie hostile work environment claim because the alleged actions were not sufficiently pervasive, a requirement of a hostile work environment claim under both Title VII and the NJLAD.[2] Defs.' Mot. Dismiss at 11.[3] In determining whether harassment is "severe or pervasive," "isolated incidents" are generally not enough to sustain a claim for a hostile work environment "unless extremely serious." Faragher v. City of Boca Raton, 524 U.S. 775 (1998). Discrimination is pervasive when incidents "occur either in concert or with regularity." Andrews, 895 F.2d at 1484. No "magic threshold" exists as to a number of required incidents, and frequency must be balanced against other factors, such as "its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at 787-788; see also West v. PECO, 45 F.3d 744, 757 (3d Cir. 1995) ("frequency . . . is to be considered in context, including the severity of the incidents").

Where a coworker made "several disparaging remarks" referencing a plaintiff's national origin, along with several threatening comments, the Third Circuit found that the comments did "not establish that discrimination was pervasive." Kidd v. MBNA Am. Bank, N.A., 93 Fed. Appx. 399, 402 (3d Cir. 2004). However, the Third Circuit has also held that requiring "daily

---

[2] Defendants argue that the allegations made by Plaintiff "do not plausibly give rise to an entitlement of relief" under Title VII and the NJLAD, but they do not specify which elements of those causes of action they do not believe are supported by sufficient factual matter. (Defs.' Mot. Dismiss at 11.) For the purposes of this opinion, the Court will analyze the sufficiency of Plaintiff's factual allegations as a whole, but with particular focus on the pervasiveness issue, as that appears to be the basis of Defendants' argument.

[3] Because Defendants did not include page numbers on their brief in support of their motion to dismiss, for the purposes of citation in this opinion, the Court has designated the cover page of the brief as page 1, with all following pages numbered in sequential order.

contact" with the harasser is an "overly restrictive" application of the pervasiveness requirement. West, 45 F.3d at 757.

Incidents involving co-workers are relevant in establishing a hostile work environment. For example, the District of Columbia Circuit concluded that "harassment of other women working alongside" a plaintiff "was directly relevant" to whether a hostile work environment existed under Title VII. Vinson v. Taylor, 753 F.2d 141, 146 (D.C. Cir. 1985). The New Jersey Supreme Court made a similar finding in applying the NJLAD, noting that a plaintiff's "work environment is affected not only by conduct directed at herself but also by the treatment of others. A woman's perception that her work environment is hostile to women will obviously be reinforced if she witnesses the harassment of other female workers." Lehmann, 626 A.2d at 457.

Further, in one case, the Third Circuit held that even "facially neutral" mistreatment when considered together with overt sexual misconduct "constituted the hostile work environment." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 148 (3d Cir. 1999). In this case, in addition to the alleged overtly sexual comments made to her and other Board employees, Plaintiff has alleged mistreatment on the part of Monillas that is not overtly sexual or gender-based.[4] These allegations are relevant to Plaintiff's burden to plead an "overall scenario" of harassment. Id. at 149.

[4] The "facially neutral" allegations include an e-mail sent by Monillas to Plaintiff that included other Board employees as recipients suggesting that Plaintiff "w[o]ke up on the wrong side of bed." (Compl. ¶ 43). Plaintiff also alleges that Monillas relocated a Co-Op coordinator located on the campus that Plaintiff supervises to a remote and inconvenient location, and that he ridiculed and demeaned various female Board employees in a manner that was not overtly sexual. (Compl. ¶ 103. 104, 118-20). None of these actions, taken alone, would be indicative of unlawful sexual harassment. Indeed, the Supreme Court warned against applying Title VII as a "general civility code." Faragher, 524 U.S at 788. However, the Third Circuit in Durham warned of disaggregating allegedly discriminatory acts, including acts that are not overtly sexual in nature, and analyzing each one individually. Durham, 166 F.3d at 149. Similarly, the Third Circuit held in Andrews that "offensive conduct is not necessarily required to include sexual overtones in every instance." Andrews, 895 F.2d at 1485.

Plaintiff's burden at this stage is to sufficiently plead a Title VII-based hostile work environment claim. Whether the evidence will ultimately show that Plaintiff has established a prima facie claim of sexual harassment is best left for summary judgment or trial. In this matter, when considering the conduct alleged to have been directed at Plaintiff along with incidents involving other Board employees, the Court finds that Stallone had alleged sufficient facts to state a claim. She alleges that her immediate supervisor, Monillas, sent two e-mail messages inappropriately inviting Stallone to share a hotel room with him. In connection with the proposed hotel stay, she alleges that she was told by another Board employee that Monillas indicated that he would be sleeping in the nude during the proposed trip involving the hotel. She further alleges that Monillas made other inappropriate comments of a sexual nature in her presence that were directed at other women, such as a comment about another employee's pubic hair, and that he ridiculed Plaintiff and other female employees in a manner that was not overtly sexual, but was part of a pattern of sexual harassment. In order to prevail in her claim, Plaintiff must still adduce evidence proving that the alleged conduct was pervasive, that all other elements of a hostile work environment claim are met, and that the conditions of her employment were altered as a result. At this stage, Plaintiff has made sufficient factual pleadings, entitled to an assumption of truth, to plead a claim against the Board under Title VII and the NJLAD.

**B. Plaintiff's Title VII Claim Against Monillas**

Defendant argues that Plaintiff's Title VII claim should be dismissed against Defendant Monillas because individual supervisory employees are not subject to liability under Title VII. In opposition, Plaintiff argues that Monillas is being sued only in his official capacity, and thus the claim should not be dismissed. Plaintiff cites Verde v. City of Philadelphia, 862 F. Supp. 1329 (E.D. Pa. 1994), to support her Title VII claim against Monillas in his official capacity.

The Verde court granted a motion to dismiss against an individual in his individual capacity, but denied the motion to dismiss the individual in his official capacity.[5]

Title VII prohibits an "employer" from "discriminat[ing] against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2. The term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).

Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability: "Congress did not intend to hold individual employees liable under Title VII." Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996); see also Newsome v. Admin. Office of the Courts of the State of New Jersey, 51 F. App'x 76, 79 n.1 (3d Cir. 2002) ("it is settled that Title VII does not provide for individual liability"); Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) ("individual employees are not liable under Title VII") (citing Sheridan, 100 F.3d 1061).

The issue in the present case is whether Title VII permits claims against an individual supervisor in his official capacity. This issue is unsettled; there are cases in this Circuit upholding and rejecting Title VII claims against individuals in their official capacities.[6]

---

[5] The Verde court did not discuss the basis for upholding an official-capacity claim against an individual defendant; the Verde analysis of official capacity liability focused on whether the plaintiff had adequately alleged that the defendant was her supervisor. Verde, 862 F. Supp. at 1335.

[6] Other Circuits appear split on whether Title VII actions can be brought against individual defendants in their official capacities. Compare Sauers v. Salt Lake Cnty., 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate") and Johnson v. Univ. of Cincinnati, 215 F.3d 561, 571 (6th Cir. 2000) ("Plaintiff is allowed to proceed with his claims brought under Title VII against the University and Dr. Steger in his official capacity"), with Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities").

Other courts, in addition to Verde, have upheld Title VII actions against individual supervisors in their official capacities. See, e.g., Watkins v. Pa. Bd. of Prob. & Parole, Civ. 02-2881, 2002 U.S. Dist. LEXIS 23504, 2002 WL 32182088, at *10 (E.D. Pa. Nov. 25, 2002) ("Although supervisors may not be held individually liable, Title VII is a statutory expression of traditional respondeat superior liability . . . . Consequently, supervisors may be sued in their official capacity"); Timmons v. Lutheran Children & Family Serv. of E. Pa., Civ. 93-4201, 1993 U.S. Dist. LEXIS 18011, 1993 WL 533399, at *5 (E.D. Pa. Dec. 17, 1993) (individual defendant who was a supervisor "may be held liable under Title VII as acting in his official capacity").

In addition, the Third Circuit has stated, in dicta, that "[u]nder Title VII, a public official may be held liable in her official capacity only, making the doctrine of qualified immunity, which protects only against personal liability, inapplicable." In re Montgomery Cnty., 215 F.3d 367, 372-73 (3d Cir. 2000). This statement came in the context of assessing whether an interlocutory appeal regarding qualified immunity was timely when the district court had not addressed qualified immunity because it had improperly characterized a claim as a Title VII claim. The Montgomery County court explained that qualified immunity is inapplicable with Title VII, but the case did not actually involve a Title VII claim. District courts have interpreted its dicta regarding Title VII in opposite ways. One District of New Jersey court cited Montgomery County for the proposition that "[u]nder Title VII public officials may only be held liable in their official capacity." Lopez v. Cnty. of Passaic, Civ. 04-5789 (KSH), 2007 U.S. Dist. LEXIS 47343, 2007 WL 1963039, at *4 (D.N.J. June 29, 2007). Another District of New Jersey court dismissed Title VII claims against an individual defendant in his official capacity and declined to apply Montgomery County, stating, "[s]ince Montgomery County was not a Title VII case it did not, and could not, address the issue at bar—whether a Title VII claim seeking

damages may proceed against an employee in his or her official capacity." Galm v. Gloucestor Cnty. Coll., Civ. 06-3333 (NLH), 2007 U.S. Dist. LEXIS 61635, 2007 WL 2442343, at *2 (D.N.J. Aug. 22, 2007).

In addition to Galm, numerous courts in this Circuit have held that Title VII does not permit claims against supervisors in their official capacities.  See, e.g., Schanzer v. Rutgers Univ., 934 F. Supp. 669, 678 n.12 (D.N.J. 1996) (declining to follow Verde and holding that "[i]f the defendant is not plaintiff's employer, . . . it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual."); Behrens v. Rutgers Univ., Civ. 94-358 (JBS), 1996 U.S. Dist. LEXIS 22311, 1996 WL 570989 at *8 n.10 (D.N.J. Mar. 29, 1996) (declining to follow Verde and "find[ing] no basis for this distinction between 'official' and 'individual' suits in the statutory language of Title VII"); Watson v. Dep't of Servs. for Children, Youths & Their Families Delaware, Civ. 10-978 (LPS), F. Supp. 2d , 2013 U.S. Dist. LEXIS 42203, 2013 WL 1222853 at *4 (D. Del. Mar. 26, 2013) ("The Title VII claims against DSCYF employees in their official capacities are actually claims against the DSCYF . . . . Accordingly, [plaintiff]'s Title VII claims against the DSCYF employees in their official capacities will be dismissed."); Foxworth v. Pa. State Police, Civ. 03-6795, 2005 U.S. Dist. LEXIS 6169, 2005 WL 840374, at *4 (E.D. Pa. Apr. 11, 2005) ("Because the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant").

Although there is conflicting precedent, the Court holds that Plaintiff cannot bring a Title VII claim against Monillas in his official capacity.  The reasoning is persuasive in the cases dismissing official capacity claims against individual defendants who are not themselves employers.  Title VII provides for liability against employers, not supervisors. Naming a

supervisor as a defendant in his official capacity is redundant especially when, as in this case, the employer is also named as a Defendant. Because Plaintiff's employer is a defendant, she suffers no prejudice by the Court dismissing her official-capacity claim against the Monillas. Plaintiff's Title VII claim against Defendant Monillas will be dismissed with prejudice.[7]

**C. Plaintiff's Retaliation Claim under Title VII and the NJLAD**

In order to establish a prima facie case of retaliation under the LAD, a plaintiff must show that: (1) she was in a protected class; (2) she was engaged in protected activity known to the employer; (3) she was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence. Victor v. State, 203 N.J. 383 (N.J. 2010). The Title VII standard is virtually identical. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231-232 (3d Cir. 2007).

Defendants do not contest in their motion that Plaintiff has sufficiently pled the elements of a retaliation claim under Title VII or the NJLAD. Rather, Defendants argue that her retaliation claims based upon her reduction in compensation are precluded by an earlier administrative proceeding.

The doctrine of "collateral estoppel, or 'issue preclusion' . . . . bars re-litigation of discrete issues, even in a case based on an entirely different claim. The fundamental question is

[7] In the alternative, Plaintiff argues that, "[t]o the extent the Court believes that Stallone's Title VII claim against Monillas is redundant . . . Stallone submits that dismissal of Monillas is not mandatory or necessary, but rather discretionary . . . ." (Pl.'s Opp'n at 13-14.) Plaintiff cites Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998), which held that "we will exercise our discretion and grant the Defendants['] Motion to dismiss the official capacity claims against [individual] Defendants . . . ." Satterfield does not involve Title VII claims. The question presently before the Court is whether Plaintiff can bring Title VII claims against an individual defendant in his official capacity and, although the Court has found conflicting precedent, the Court has not found cases holding that this specific determination is discretionary. The Court has held the Title VII claims against Defendant Monillas are legally impermissible. Even assuming, arguendo, that dismissal is discretionary, then the Court could simply exercise its discretion, as the Satterfield court did, and achieve the same result.

whether the issue has been *actually decided* by a court in a prior action." R&J Holding Co. v. Redevelopment Auth., 670 F.3d 420, 426, 429 (3d Cir. 2011). Defendants' assertion that Plaintiff's retaliation claim is precluded by collateral estoppel due to the administrative action is unavailing. While the doctrine of collateral estoppel operates to prevent re-litigation of factual issues already decided in another proceeding, the claims raised in the instant complaint are beyond the jurisdiction of the Office of Administrative Law ("OAL"). While neither party has supplied the Court with a copy of the OAL decision, the retaliation claims pled in the complaint would not be within the jurisdiction of the OAL. The OAL only possesses "jurisdiction over a matter . . . after it has been determined to be a contested case by an agency head . . . " N.J. Admin. Code § 1:1-3.2(a). In turn, the relevant agency head in this dispute, the Commissioner of Education, only has jurisdiction to adjudicate (and thus jurisdiction to refer to OAL) "controversies and disputes arising under the school laws." N.J. Stat. Ann. § 18A:6-9. Thus, while the OAL may hear matters such as whether a school employee's tenure rights are violated by a compensation decrease, it does not have jurisdiction to determine whether allegedly retaliatory employment decisions violate other law.

It is evidently only the issue of Plaintiff's tenure rights that could have been adjudicated by the OAL. Whether a compensation decrease violated tenure rules is not the same issue as whether a compensation decrease was retaliatory. Because the OAL, due to its jurisdictional restrictions, is not competent to determine whether an employment action violated Title VII or the NJLAD, issue preclusion does not apply to bar Plaintiff's retaliation claims.

**D. Plaintiff's § 1983 Claims**

Defendant Board seeks dismissal of Plaintiff's § 1983 claim on the ground that Plaintiff has not identified an official policy or custom that resulted in the violation of Plaintiff's rights. The Court agrees that Plaintiff has not identified any policy or custom that caused her injuries.

According to the Supreme Court's holding in Monell v. Department of Social Services, 436 U.S. 658 (1978), a public municipal entity, such as a school board, can be held liable if a plaintiff proves the existence of an official policy or a custom that has resulted in a constitutional violation. However, a municipal entity cannot be held liable "solely because it employs a tortfeasor—or in other words a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. The Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Comm'rs of Bryan Cnty. v. Brown., 520 U.S. 397, 403 (1997).

An official policy generally consists of a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." Monell, 436 U.S. at 690. A custom, on the other hand, refers to an official practice that is "so permanent and well settled" as to have the force of law. Id. at 691. Plaintiff alleges that the Board acted "in violation of its Affirmative Action Policy and Affirmative Action Regulation," (Pl.'s Opp'n at 15), thus evidently acknowledging that the Board had policies in place to address concerns of workplace harassment. Plaintiff does not point to any official policy that facilitated her harassment, nor does she point to a well-settled custom that permitted any harassment or discrimination. Contrary to Plaintiff's argument, the violations being "related to a policy" adopted by the Board (Pl.'s Opp'n at 16) is not sufficient—rather the policy or custom must be "the moving force" behind the deprivation of a plaintiff's constitutional rights. Monell, 436 U.S. at 694. Instead, Plaintiff has identified anti-discrimination policies that the Board allegedly had

in effect but did not follow.  Because the Board is not liable for the actions of Dr. Monillas under a respondeat superior theory under § 1983, and Plaintiff has not pled facts indicating liability arising from the Board's policies or customs, Plantiff's § 1983 claim against the Board will be dismissed.  The dismissal, however, will be without prejudice to Plaintiff's right to file an amended complaint prior to the current deadline for amending pleadings of October 1, 2013, or such date as may be set by the Magistrate Judge.  (See Docket Item 14).

**Intentional Infliction of Emotional Distress**

Defendants also move for summary judgment on the New Jersey common law claims in the complaint for Intentional Infliction of Emotional Distress ("IIED") on the ground that Plaintiff has failed to meet the tort threshold of the New Jersey Tort Claims Act ("NJTCA").  Because the Board is a public entity and because Plaintiff is suing Monillas in his official capacity, the NJTCA applies to Plaintiff's IIED claim.  The NJTCA provides that when the defendant is a public entity, no damages for pain and suffering may be awarded unless the plaintiff has suffered a permanent injury requiring at least $3,600.00 in medical treatment expenses.  N.J. Stat. Ann. § 59:9-2.  When a claim is for emotional distress, there must be objective manifestations of the emotional distress that are verified by physical examination and observation of a physician.  Randall v. State, 649 A.2d 408, 410 (N.J. App. Div. 1994).

Although Plaintiff has pleaded that as a result of Defendants' conduct, she has suffered from high blood pressure, acid reflux and insomnia (Compl. ¶ 8-9.), Plaintiff has not pleaded that a permanent injury exists requiring at least $3,600.00 in medical expenses.  Plaintiff argues that some of her damages, such as mental anguish, humiliation, and stress should not be considered under the umbrella of "pain and suffering."  However, "New Jersey courts have characterized the subjective symptoms accompanying emotional distress as falling within the definition of pain

and suffering," including such symptoms as "humiliation" and "mental pain and anguish." PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808 (D.N.J. 1993) (citing Ayers v. Jackson Twp., 106 N.J. 557, 576-77 (N.J. 1987)).

The damages that Plaintiff alleges in relation to her IIED claim fall within the definition of "pain and suffering" as defined by New Jersey Courts. Because Plaintiff has not alleged permanent loss of a bodily function, permanent disfigurement, or dismemberment, and she has not alleged medical expenses exceeding $3,600.00 from injuries caused by Defendants, her IIED claim is barred by the NJTCA.

Because of the foregoing, the Court does not reach the issue of whether Plaintiff satisfied the notice requirements of the NJTCA. Considering that all of the injuries alleged in the Sixth count of Plaintiff's complaint fall within the definition of "pain and suffering," the NJTCA mandates dismissal of this count in its entirety.

## IV. Motion for More Definite Statement

Defendants also request a more definite statement pursuant to Fed. R. Civ. P. 12(e). Defendants request more information regarding the conduct that forms the basis of Plaintiff's punitive damages request. In addition, if the Court does not dismiss Plaintiff's IIED claim, then Defendants request a more definite statement regarding the IIED claim, when the conduct occurred, and when she began to experience distress.

Because the Court has dismissed Plaintiff's IIED claim, Defendants' motion for a more definite statement regarding Plaintiff's IIED claim will be dismissed as moot. Defendants' request for a more definite statement regarding punitive damages will be denied.

### A. Standard of Review

Fed. R. Civ. P. 12(e) states, "A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion . . . must point out the defects complained of and the details desired." A motion for a more definite statement "is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 522 (E.D. Pa. 2012) (citation omitted). "Whether to grant a motion under Rule 12(e) is a matter committed largely to the discretion of the district court." Clark v. McDonald's Corp., 213 F.R.D. 198, 232 (D.N.J. 2003).

**B. Defendants' Motion for More Definite Statement Will Be Denied**

Defendants argue that "Plaintiff is vague in identifying what conduct she believes would entitle her to punitive damages" and that "[w]ithout more specific factual allegations with regard to these allegations, defendants cannot adequately prepare their defense." (Defs.' Mot. Dismiss at 18.)

Plaintiff's Complaint is not unintelligible, vague, or ambiguous. It is clearly written and provides details, including exact quotations, dates, and locations for many of the incidents that it alleges to have taken place. It sets forth fair notice of Plaintiff's claims and the grounds upon which those claims rest.

Defendants have not provided any specific, valid reason as to why a more definite statement would be necessary. Defendants cite Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006), for the proposition that "[w]hen presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Thomas is inapposite because it involved a "pleading as to which a qualified immunity

defense cannot reasonably be framed." Id. at 289. The Thomas court noted the interest in "avoid[ing] the risk of subjecting public officials who are immune to suit from the burdens of discovery." Id. at 291. Defendants have not asserted that Plaintiff's Complaint precludes them from presenting a qualified immunity defense and, therefore, Thomas does not support their motion for a more definite statement.

Defendants' motion for a more definite statement will be denied.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED** as to Count 1 as to the Board, and **GRANTED** as to Count 1 as to Monillas, **DENIED** as to Counts 3, 4 and 5, and **GRANTED** as to Counts 2 and 6. Defendants' Motion for a More Definite Statement is **DENIED**. An appropriate Order shall enter.

Dated: 9/13/2013

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge